## McINNES v. AMERICAN SURETY CO. OF NEW YORK.

(Circuit Court of Appeals, Eighth Circuit. April 2, 1926.)

No. 6912.

1. **Assignments** ⊕=24(1)—Surety company, having paid county treasurer's defalcation and taken assignment of county's rights, had right to sue bank alleged to have aided treasurer by concealing shortage (Code N. M. 1915, § 4264).

Under Code N. M. 1915, § 4264, surety company, having paid county treasurer's shortage and taken assignment of county's rights, had right to sue, through subrogation, bank alleged to have aided treasurer in concealing shortage existing in his accounts, as cause of action was assignable.

2. **Fraud** ⊕=47—Complaint by surety, paying treasurer's defalcation against bank alleged to have assisted by making false reports, held to sufficiently allege facts showing loss resulted proximately from bank's actions.

Complaint in action by surety company, who had paid county treasurer's defalcation against bank, alleging that, if bank had certified correct amounts, the shortage would have been discovered and treasurer removed from office, preventing increase of shortage, held to allege sufficient facts showing that surety's loss resulted proximately from alleged false reports of the bank.

3. **Equity** ⊕=363.

On motion to dismiss, in nature of demurrer, facts sufficiently pleaded must be taken as true.

4. **Fraud** ⊕=46—Complaint by surety company, paying county treasurer's defalcation against bank alleged to have assisted by making false reports, held sufficient to show reliance on false reports and injury thereby.

Complaint in action by surety, paying county treasurer's defalcation against bank alleged to have assisted in concealing shortage by making false reports, alleging that county refrained from taking action to remove treasurer because of nature of reports made, held to sufficiently establish that county acted in reliance on false reports, and that it thereby suffered injury.

5. **Subrogation** ⊕=41(5)—Failure of complaint to allege that plaintiff would not have become surety for county treasurer, if shortage concealed by defendant bank had been discovered, held immaterial, where action was brought through subrogation to rights of county.

In action by surety, having paid county treasurer's defalcation against bank alleged to have aided in concealing shortage by false reports, failure of complaint to allege that plaintiff would not have become. surety if shortage had been discovered in action taken by county held immaterial, where suit was brought through subrogation to rights of county.

6. **Fraud** ⊕=33—Action of county on discovering treasurer's shortage held not too speculative on which to base action by surety against bank assisting in concealing treasurer's shortage (Laws N. M. 1915, c. 57).

Action of county relative to permitting treasurer to remain in office after shortage had been discovered held not too speculative on which to base action by surety against bank assisting in concealing shortage, since action of county in conformity with Laws N. M. 1915, c. 57, is to be presumed.

7. **Equity** ⊕=363.

On motion to dismiss, allegations of bill must be given their full, fair, legal intendment.

8. **Equity** ⊕=363.

Motion to make allegations of bill more certain, and not motion to dismiss, is appropriate, where allegations are inartificial in some respects and lacking in definiteness.

Williams, District Judge, dissenting.

Appeal from the District Court of the United States for the District of New Mexico; Orie L. Phillips, Judge.

Suit by the American Surety Company of New York against the Citizens' National Bank, wherein W. J. McInnes, appointed receiver of the Citizens' National Bank on its insolvency, intervened. Judgment for complainant, and receiver appeals. Affirmed.

R. D. Bowers, of Roswell, N. M., for appellant.

Francis C. Wilson, of Santa Fe, N. M., for appellee.

Before STONE and VAN VALKENBURGH, Circuit Judges, and WILLIAMS, District Judge.

VAN VALKENBURGH, Circuit Judge. One Ben C. Davisson was the duly elected and qualified treasurer and collector of Chaves county, N. M., from January 1, 1917, to November 12, 1920. His first term as such treasurer and collector was from January 1, 1917, to January 1, 1919. He served as treasurer under a second term from January 1, 1919, to November 12, 1920. The appellee herein was his surety during his second term. At the close of his incumbency he was found to have embezzled funds of the county in the aggregate sum of $60,150.46; of this shortage in his accounts $32,450.46 was allocated to his second term, which sum appellee, as such sure-

ty, was compelled to pay to the county. In consideration of such payment the county executed an agreement whereby it assigned, transferred, and made over to appellee all of its right, title and interest to any and all claims, causes of action, and rights of reimbursement arising out of the said shortage of its treasurer.

Appellee sued to recover the amount which it had been compelled to pay, as subrogated to all the rights and remedies of Chaves county, and as grounds therefor alleged that on the last day of April, 1917, Treasurer Davisson deposited in the American National Bank of Roswell, N. M., his check, as county treasurer, in the amount of $7,725, drawn on county funds on deposit in said bank; that the amount of this check was credited to his account as treasurer on the last day of April aforesaid, and that on the 1st day of May the bank made its certified statement to the board of finance of Chaves county and to the state traveling auditor, showing said amount of $7,725 as a deposit to the credit of the county, and not as a withdrawal of funds of the treasurer already on deposit in said bank; that the same was not charged against the deposit of the treasurer until later; that thereby the American National Bank made fictitious and false reports to the state board of finance and the state traveling auditor, showing a fictitious amount to the credit of said Davisson, and that said certified statement showed as on deposit $7,725 more than was actually on deposit to the credit of Davisson in said bank; that exactly the same transactions took place during each of the months of May, June, July, August, and September of 1917, and that this certifying to the board of finance and the state traveling auditor of fictitious amounts to the credit of Davisson, as treasurer and collector, was done by agreement between the said Davisson and one H. B. Sanders, at that time the cashier and duly authorized representative of the bank; that the same was known by other officials of the bank, and was, in fact, done by agreement between the bank and Davisson, for the purpose of deceiving the board of finance and the state traveling auditor, and for the purpose of enabling Davisson to conceal a shortage then existing in his accounts as treasurer; that the said board of finance and the said state traveling auditor were deceived thereby, and the said Davisson was enabled to conceal the shortage then existing in his accounts as treasurer and collector, and to increase the same from time to time,

until on November 12, 1920, his shortage had reached the amount of $60,150.46, as aforesaid; that, if the American National Bank had certified the correct amount at any time when it certified a fictitious and incorrect amount to the credit of Davisson, the shortage of the said treasurer would have been discovered by the county and by the state traveling auditor, and the said treasurer would have been removed from office, and there would have been no possibility of his increasing the shortage in his accounts, as he subsequently did; that the said American National Bank was at all times during the term of said treasurer duly designated and qualified as a depository of the public moneys of Chaves county, N. M., in accordance with the terms of the statutes of New Mexico, to wit, chapter 57, New Mexico Session Laws of 1915, and the amendments thereto; that under said laws a depository of public moneys of any county in the state was required to certify to the board of finance of the county, of which it was such depository, on the 1st of each month, the amount of public moneys of said county which it then had on deposit, and was also required to furnish a similar statement the 1st of each month to the state traveling auditor of the state of New Mexico; that under the laws of New Mexico then existing any county officer elected by the people, such as this treasurer, might be removed from office on any one of the following grounds: (1) Conviction of any felony or of any misdemeanor involving moral turpitude; (2) failure, neglect, or refusal to discharge the duties of the office, or failure, neglect, or refusal to discharge any duty devolving upon the officer by virtue of his office; (3) knowingly demanding or receiving illegal fees as such officer; (4) failure to account for money coming into his hands as such officer; (5) gross incompetency or gross negligence in discharging the duties of the office; (6) any other act or acts which in the opinion of the court or jury amount to corruption in office or gross immorality, rendering the incumbent unfit to fill the office.

It was further alleged in said bill of complaint that, beginning with September, 1917, and thereafter continuously to and including November, 1920, the said treasurer, on or about the last of each month drew checks upon the funds deposited to his credit as treasurer in the various banks of Roswell, N. M., which were depositories of such funds, including the American National Bank aforesaid, the Citizens' National Bank, and the First State Bank & Trust Company

of Roswell, and deposited the same in some one of such other depositories; that thereafter, on the 1st of the succeeding month, each of said banks would make reports to the board of finance and the state traveling auditor aforesaid of the amount of public moneys of said county which it then had on deposit; that such reports would show as a credit to the treasurer said checks so drawn and deposited, but would not show in the reports of the banks from which they were withdrawn the corresponding decrease in the deposits therein, whereby the treasurer would receive duplicate credits and the true condition of his accounts would thereby be concealed from the county; that all said banks, including said American National Bank, knew the facts as to said fraudulent transactions by Davisson, or could have ascertained the exact facts in reference thereto by an examination of their records; that thereby said treasurer was enabled to conceal and increase his said shortage until it reached the large amount above set forth.

It is further alleged that on or about November 7, 1921, the Citizens' National Bank of Roswell, N. M., took over all of the affairs and assets of the American National Bank, and the American National Bank was merged and consolidated with said Citizens' National Bank, which thereafter conducted all of the business and affairs of the American National Bank, and that the sole and only consideration for the transfer to the Citizens' National Bank by the American National Bank of all of its assets was that the former issued shares of its stock to the stockholders of the latter, and that as a result of said merger and consolidation the Citizens' National Bank became responsible for all the debts and liabilities of the American National Bank. In the suit filed the Citizens' National Bank was accordingly made defendant, but after the filing of the action said Citizens' National Bank became insolvent, and the appellant, McInnes, was duly appointed its receiver, and intervened in said suit on behalf of its creditors and stockholders.

To the bill of complaint the defendants below filed a motion to dismiss, which was by the court overruled. Defendants declined to plead further, and judgment was accordingly rendered in favor of appellee for the amount claimed, together with interest. Three points are urged by appellant: First, that this is an action for fraud and deceit, grounded in false representations, and that the bill of complaint fails sufficiently to allege the requirements essential to the maintenance of the action; in other words, that the bill does not state facts sufficient to constitute a cause of action against the defendants. Second, that the bill fails to allege facts showing that the loss claimed by complainant resulted proximately from the reports of the bank set out in the complaint. Third, that, even if the complaint otherwise showed a cause of action, complainant cannot recover because the allegations are not sufficient to give it the right to sue defendants through subrogation.

[1] The right to recover against appellant is not contested, provided that right existed against the American National Bank by which the alleged false reports to the board of finance of Chaves county and the state traveling auditor were made. The right of subrogation under the pleadings is challenged, but the challenge is without merit. Under the statutes of New Mexico (Codification of 1915, § 4264), this form of action survives and statutes making actions ex delicto survivable makes them also assignable.

[2] The bill of complaint sufficiently alleges facts showing that the loss claimed by complainant resulted proximately from the alleged false reports made by the bank. While the loss primarily was occasioned by the embezzlement of Davisson, nevertheless the bank actively participated in the concealment of that embezzlement. The statute requiring depositories to make reports was enacted for the specific purpose of enabling counties monthly to be advised of the financial condition of the treasurer, in order that they might take appropriate action to protect themselves from loss at the hands of dishonest officials. This was known to the bank, and the results of its tortious acts in making false reports was, of course, to be anticipated. Such acts were, in any event, concurrent and efficient causes of the loss sustained. Furthermore, it is alleged that they were the result of express agreement between Davisson and the officials of the bank.

Appellant contends that the complaint is insufficient, in that it does not allege (1) that plaintiff acted in reliance upon the false reports; and (2) that it thereby suffered injury. Respecting this first requirement counsel for appellant says: "Plaintiff must allege that the county of Chaves acted in reliance upon the reports made by the American National Bank. This does not mean to allege the mere words that 'the county of Chaves acted in reliance upon said reports'; but facts must be alleged,

showing how the county relied upon them, and what action it took or refrained from taking on account of such reports."

[3, 4] The complaint does allege that the county and the state traveling auditor were deceived by these reports, that thereby they failed to discover the shortage, and that, if the reports had reflected the true situation, and the shortage, accordingly, had been discovered, the county would have taken action, and the treasurer would have been removed from office. The reports in question were required by statute for the very purpose of setting in motion the legal action provided for the protection of counties. The conduct of the treasurer disclosed by the complaint was a sufficient ground for his removal under the provisions quoted. The presumption is that the officers of county and state would have acted in the full discharge of their duty. The funds in question were in a legal sense lost to the county, and would have been actually lost, but for the security afforded by appellee. The complaint alleges what action the county refrained from taking because of the nature of the reports made, and upon motion to dismiss, in the nature of demurrer, the facts sufficiently pleaded must be taken as proved. In our judgment, therefore, both requirements for which appellant contends were sufficiently established.

[5, 6] While the main ground for recovery deals with the reports made during the first term of the treasurer, nevertheless the effect thereof was a continuing one, which extended through the entire period of his official service. The bill further charges transactions in the nature of a systematic "kiting" of checks, which continued monthly from September, 1917, up to and including November, 1920. Nearly two years of this period were embraced within the second term and during the suretyship of appellee. We do not hold that a bank would necessarily be charged with knowledge of isolated acts of this nature, but we cannot say, as matter of law, that such transactions, occurring monthly over a period of three years, would not excite suspicion and demand investigation, especially in view of the prior tortious conduct alleged, and of the further fact that these fictitious withdrawals and deposits must necessarily form the basis of monthly reports solemnly required by express statute.

It was suggested in argument that the complaint does not allege that appellee would not have become surety for Davisson, if the shortage had been discovered and the resulting action by the county had been taken.

This suggestion loses sight of the fact that appellee is suing in the right of the county; therefore what it would or would not have done is not material. It is likewise urged that what action the county would have taken, and whether Davisson would have been permitted to remain in office and to succeed himself for another term, is a matter too speculative upon which to base this action. We think the action of the county, in conformity with law, as stated in the complaint, is to be presumed. In this view, what the surety company would or would not have done is beside the point. The concrete fact is that it did assume its contract of suretyship, in the absence of such disclosure, and its loss has resulted. It is incredible, however, that it would have entered into such a contract if the true situation had been disclosed.

[7, 8] Upon motion to dismiss, the allegations of the bill must be given their full, fair, legal intendment. If those allegations are inartificial in some respects, and lacking in definiteness, a motion to make them more certain would have been appropriate. Such is not the office of a motion to dismiss. We think the allegations of the bill on the whole were sufficient to sustain the judgment rendered.

It follows, therefore, that that judgment should be affirmed; and it is so ordered.

WILLIAMS, District Judge (dissenting). Omitting jurisdictional averments and prayer, the bill is as follows:

"(4) That from January 1, 1917, to November 12, 1920, one Ben C. Davisson was the duly elected and qualified treasurer and collector of Chaves county, New Mexico.

"(5) That during the period from January 1, 1919, to November 12, 1920, the American Surety Company of New York, plaintiff herein, was the surety on the official bond of Ben C. Davisson as treasurer and collector of Chaves county, New Mexico, a copy of said bond is attached hereto, marked 'Exhibit A', and made a part hereof.

"(6) That during the said term of Ben C. Davisson from January 1, 1919, to November 12, 1920, there was a shortage of thirty-two thousand four hundred fifty and $\frac{46}{100}$ ($32,450.46) dollars in the funds which the said Ben C. Davisson should have had in his keeping as treasurer and collector of Chaves county, New Mexico; said shortage covering funds which had come into the

keeping of said Ben C. Davisson as treasurer and collector of Chaves county, state of New Mexico, during the said period from January 1, 1919, to November 12, 1920.

"(7) That proper written demand was made upon the said Ben C. Davisson by the proper county officials to make good the said shortage in his funds as treasurer and collector of Chaves county, state of New Mexico, but that said Ben C. Davisson failed to comply with said demand, and has not made good said shortage or any part thereof, and that thereafter proper demand in writing, based upon the plaintiff's liability on the bond above set out, was made upon the plaintiff to make said shortage in the accounts of said Ben C. Davisson, and the plaintiff has complied with said demand, and has paid to the board of county commissioners of Chaves county, New Mexico, the sum of thirty-two thousand four hundred fifty and 46/100 ($32,450.46) dollars in payment of its liability on the official bond of said Ben C. Davisson as treasurer and collector of Chaves county, New Mexico, thirty thousand six hundred four and 12/100 ($30,604.12) dollars of which was paid on or about the 14th day of May, 1921, and one thousand eight hundred forty-six and 34/100 ($1,846.34) dollars on or about the 24th day of May, 1923.

"(8) That on or about November 7, 1921, the defendant bank took over all of the affairs and assets of the American National Bank, and the American National Bank was merged and consolidated with the defendant bank, and the defendant bank thereafter handled and conducted all of the business and affairs of the said American National Bank, and that the sole and only consideration for the transfer to the defendant bank by the American National Bank of all of its assets was that the defendant bank issued shares of its stock to the stockholders of the said American National Bank, and that as a result of said merger and consolidation defendant bank became, and is now, and at all times material hereto has been, responsible for all the debts and liabilities of the American National Bank.

"(9) That the defendant bank has been at all times material hereto duly designated and qualified as a depository of the public moneys of Chaves county, New Mexico, in accordance with the terms of the New Mexico statutes in such cases made and provided, to wit, chapter 57, New Mexico Session Laws of 1915, and the amendments thereto, and that the American National Bank of Roswell, New Mexico, has at all times mate-

rial hereto, and prior to its consolidation with defendant bank as hereinabove alleged, been a duly designated and qualified depository of the public moneys of Chaves county, New Mexico, in accordance with the terms of the New Mexico statutes in such cases made and provided, to wit, chapter 57, Session Laws of 1915, and the amendments thereto.

"(10) That some time prior to the last day of April, 1917, and on that date, there was a shortage of seven thousand seven hundred twenty-five ($7,725.00) dollars in the funds which the said Ben C. Davisson should have had in his keeping as treasurer and collector of Chaves county, New Mexico, the said amount of county funds having been converted by Ben C. Davisson to his personal use; that said shortage continued as long as said Ben C. Davisson was treasurer and collector of Chaves county, and was increased from time to time until, on November 12, 1919, said shortage amounted to sixty thousand one hundred fifty and 46/100 ($60,150.46) dollars.

"(11) That under the laws of the state of New Mexico in force at all times material hereto a depository of public moneys of any county in the state was required to certify to the board of finance of the county for which it was such depository, on the 1st day of each and every month, the amount of public moneys of such county which it then had on deposit, and that under the laws of the state of New Mexico such depository was also required to furnish a similar statement the 1st day of each and every month to the state traveling auditor of the state of New Mexico.

"(12) That on the last day of April, 1917, the said Ben C. Davisson deposited in the American National Bank his check as county treasurer of Chaves county, in the amount of $7,725, drawn on county funds on deposit in said bank, and the amount of said check was credited to his account as treasurer of Chaves county on the last day of April, and on the 1st day of May the said bank made its certified statement to the board of finance of Chaves county and to the state traveling auditor, showing said amount of $7,725 as a deposit to the credit of said county, and not as a withdrawal, which it in effect was, and the amount of said check was not charged against the deposit of the said Ben C. Davisson until later, although thereby the American National Bank made fictitious and false reports to the state board of finance and the state traveling auditor, showing a fictitious

amount to the credit of the said Ben C. Davisson, and said certified statement showing as on deposit $7,725 more than was actually on deposit to the credit of said Ben C. Davisson in said bank, and that exactly the same transactions took place during each of the months of May, June, July, August, and September, 1917, and that this certifying to the board of finance of Chaves county and the state traveling auditor of the fictitious amounts to the credit of Ben C. Davisson as treasurer and collector of Chaves county was done by agreement .between the said Ben C. Davisson and one H. B. Sanders, at that time the cashier and duly authorized representative of the American National Bank, and that the said certifying of the fictitious balances was known by other officials of the American National Bank, and was done by agreement between the American National Bank and Ben C. Davisson, for the purpose of deceiving the board of finance of Chaves county and the state traveling auditor, and for the purpose of enabling the said Ben C. Davisson to conceal the shortage then existing in his accounts as treasurer of Chaves county, New Mexico, and that the said board of finance of Chaves county and the state traveling auditor were deceived thereby, and the said Ben C. Davisson enabled to conceal the shortage then existing in his accounts as treasurer and collector of Chaves county, New Mexico, and to increase the same from time to time until on November 12, 1920, said shortage had reached the amount of sixty thousand one hundred fifty and 46/100 ($60,150.46) dollars.

"(13) That if the American National Bank had certified the correct amount at any time when it certified a fictitious and incorrect amount to the credit of the said Ben C. Davisson as above alleged, the shortage in the funds of Ben C. Davisson would have been discovered by Chaves county and by the state traveling auditor, and the said Ben C. Davisson would have been removed from office, and there would have been no possibility of his increasing the shortage in his accounts as he subsequently did.

"(14) That on April 30, 1918, said Ben C. Davisson drew a check for fifteen hundred ($1,500.00) dollars as treasurer and collector of Chaves county on the American National Bank, and another check for fifteen hundred ($1,500.00) dollars on the First State Bank & Trust Company. These two checks were made payable to and deposited in the First National Bank of Roswell on the same date, and appear as a deposit to

the credit of the said Ben C. Davisson as treasurer and collector of Chaves county in the certified statement that said bank made on May 1, 1918, to the state traveling auditor and to the county board of finance, but said checks do not appear on the report made May 1, 1918, by the American National Bank to the county board of finance and to the state traveling auditor, but said amount appears as still being on deposit in said bank; that on February 28, 1919, the said Ben C. Davisson drew a check for six thousand ($6,000.00) dollars on the Citizens' National Bank, defendant herein, payable to the First State Bank & Trust Company of Roswell, and this check was deposited to his credit as treasurer and collector of Chaves county, New Mexico, in the First State Bank & Trust Company of Roswell, and shows as a part of his deposit in that bank in the report said bank made on April 1, 1918, to the state traveling auditor and the county board of finance, and is also shown as a deposit in similar reports made by the Citizens' National Bank to the county board of finance and the state traveling auditor; that, on April 30, 1920, Davisson drew a check for six thousand ($6,000.00) dollars on the First National Bank of Roswell, payable to the Citizens' National Bank of Roswell, and deposited said check in the Citizens' National on the same day, and the said amount is shown as on deposit to his credit in the report made by the Citizens' National to the state traveling auditor and to the county board of finance May 1, 1920, and is also shown as on deposit to his credit in the similar statements which the First National Bank of Roswell made to the state traveling auditor and to the county board of finance on the same day; that transactions similar to the foregoing three illustrations occurred every month from September, 1917, to November, 1920, and that the reports made on the 1st of every month by the various Roswell banks therefore showed a fictitious and false balance to the credit of the said Ben C. Davisson, thus enabling him to conceal his shortage, and that on several occasions the canceled checks used by Davisson in kiting funds to conceal his shortage had been returned to the American National Bank and the defendant bank, and the American National Bank and the defendant bank knew the facts as to said fraudulent transactions by Davisson, or could have ascertained the exact facts in reference thereto by examining said checks and their books.

"(15) That, in consideration of the pay-

ment of thirty-two thousand four hundred fifty and ⁴⁶⁄₁₀₀ ($32,450.46) dollars to the board of county commissioners of Chaves county as hereinabove alleged, the said board of county commissioners of Chaves county executed an agreement whereby the plaintiff was subrogated to all the rights and remedies of Chaves county resulting from the shortage, and the said board of county commissioners for Chaves county assigned, transferred, and set over to the American Surety Company all of its right, title, and interest to any and all claims, causes of action, and rights of reimbursement arising out of said shortage. A copy of said agreement is attached hereto, marked as 'Exhibit B,' and made a part hereof. (No such exhibit, however, appears in the record.)

"(16) That by reason of all of the foregoing transactions and matters, and because of the false and fictitious reports made by the American National Bank to the board of finance of Chaves county and the state traveling auditor, and the consequent failure to discover the shortage of the said Davisson at the time of the first report and the covering of the shortage by that means, and the subsequent defalcations of which the said Davisson was guilty, and which would have been prevented by a full disclosure of the facts by the said American National Bank, and the subsequent payment of the loss so suffered by the plaintiff herein in the manner and form as hereinbefore alleged and set out, the plaintiff has been damaged in the sum of $32,450.46."

The allegations are summarized as follows:

(1) Davisson was county treasurer and collector of Chaves county, New Mexico, during a full term from January 1, 1917, to January 1, 1919, and for part of a term from January 1, 1919, to November 12, 1920.

(2) Appellee was surety on Davisson's official bond covering second term from January 1, 1919, to November 12, 1920, but not surety on such bond during first term from January 1, 1917, to January 1, 1919.

(3) The American National Bank was the duly designated and qualified depository of public moneys under laws of New Mexico, such public depository being required under terms of statute, as well as conditions of bond, on 1st day of every month to certify to county board of finance and also state traveling auditor amount of public funds then on deposit with it, including accumulated interest.

(4) On and prior to April 30, 1917, Davisson was short in his accounts in the sum of $7,725, such shortage continuing and increasing, until at close of first term it amounted to $27,700.

(5) During Davisson's second term, from January 1, 1919, to November 12, 1920, while appellee was surety on his official bond, shortages occurred on his part aggregating $32,-450.46, which appellee as surety on proper demand paid to said county.

(6) On April 30, 1917, during his first term, Davisson deposited in the American National Bank his check as county treasurer for $7,725 drawn on county funds on deposit in said bank, which was by said bank on said date credited to his account as treasurer and collector without then and there charging same against such official account in said bank. On the next day, May 1, 1917, the American National Bank made its certified statement as to the status of said account at close of business on April 30, 1917, to the county board of finance and to the traveling auditor as required by statute, in which it showed the amount of said check, to wit, $7,-725, as a deposit to his official credit, but the amount of said check was not shown up to that time as having been charged against the treasurer's account on which it was drawn; such entry not being made until after such certificate was made on May 1, 1917, thereby causing a false report to be made to said county board of finance and to the traveling auditor, showing an excessive amount to the treasurer's credit in the sum of $7,725. Identical transactions occurred on such intervening dates until the close of September, 1917, all taking place during his first term. These false certified statements were made by agreement between Davisson and H. B. Sanders, "at that time the cashier and duly authorized representative of the" bank. The falsity of the certified statements was then and there known by other officials of the bank; same being made for the purpose of deceiving the finance board and traveling auditor, and to enable Davisson to conceal the then existing shortage.

(7) The finance board and auditor being thereby deceived, Davisson was thereby enabled to conceal his existing shortage in his public accounts, and to increase same from time to time, until they reached, on November 12, 1920, the sum of $27,700 occurring during the first term, and $32,450.46 during the second term, aggregating $60,150.46.

(8) If the bank had certified a true statement at any time when it certified a false one, Davisson's shortage would have been discovered by the county finance board or

traveling auditor, and Davisson would have been removed from office, and he would have been unable to increase the shortage as he subsequently did.

(9) On April 30, 1918, during his first term, Davisson as treasurer drawing a check for $1,500 on the American National Bank and another for $1,500 on First State Bank, both banks being in Roswell, N. M., and both checks being payable to and deposited in First National Bank in said city on said date, said bank reported them as deposited to Davisson's credit as treasurer in its certified statement made on May 1, 1918, but said checks did not appear as charged against the treasurer's account in the American National Bank's certified statement made on May 1, 1918, as to condition of such account at close of business on April 30, 1918. On February 28, 1919, during his second term, Davisson drawing a check for $6,000 on Citizens' National Bank of Roswell, N. M., payable to said First State Bank, same was deposited to his credit as treasurer in said First State Bank, and shown to his credit in said bank's certified statement made on April 1, 1918 (1919), and the amount of said check also appeared to his credit in Citizens' National Bank's certified statement of same date, said check obviously not having been cleared in time to be charged against his account in said bank. On April 30, 1920, during Davisson's second term, he drew a check for $6,000 on First National Bank in said city, payable to the Citizens' National Bank in said city, depositing same in the latter bank on same day. The amount of said check was shown to Davisson's credit in said Citizens' National Bank's certified statement of May 1, 1920, and also appeared as still on deposit to his credit in said First National Bank's certified statement of May 1, 1920.

(10) Similar transactions occurred every month from September, 1917, to November, 1920, and monthly certified statements of various Roswell banks showing false and fictitious balances to Davisson's credit, thus enabling him to conceal his shortage. On several occasions the canceled checks used by Davisson in thus kiting funds to conceal his shortage were returned to the American National Bank and Citizens' National Bank, and *"both knew the facts"* as to Davisson's said fraudulent transactions, *"or could have ascertained the facts in reference thereto by examining said checks and their books."*

(11) In consideration of said appellee, as surety, paying said sum of $32,450.46, the exact shortage during the second term, county board of finance executed an agreement subrogating appellee to county's rights and remedies and assigning to it the county's right, title, and interest to all claims, causes of action, and rights of reimbursement arising from said shortage. While it is alleged that a copy of said agreement is attached to the bill as Exhibit B, yet no copy appears in the record.

(12) By reason of the foregoing transactions, and because of the false reports made by the American National to the finance board and traveling auditor, "and the consequent failure to discover the shortage of said Davisson *at the time of the first report* and the covering of the shortage by that means, and the subsequent defalcations of which the said Davisson was guilty, and which would have been prevented by a full disclosure of the facts by the said American National Bank, and subsequent payment of loss" by the appellee, it has been damaged in the sum of $32,450.46, for which, with interest, it prays judgment was asked in the prayer.

Section 1 of chapter 57, Session Laws of New Mexico of 1915, makes it the duty of every public official who receives or disburses public moneys to keep in his office a cash book wherein shall be entered daily, in detail, all items of receipts and disbursements of public moneys, and which shall be balanced daily, so as to show the balance of public moneys on hand at the close of each day's business, and such cash book shall be a public record and shall be open to public inspection.

Section 9 of said chapter further provides that no public moneys shall be deposited in any bank until such bank is qualified to receive deposits of public moneys by giving a bond or other securities as required by that act, and that bonds of any bank or trust company designated as such depository by the proper board of finance, inter alia, shall obligate the bank executing such bond as principal for whose act its surety becomes bound, to "on the 1st day of each and every month render to the treasurer and the board of finance * * * a statement, in duplicate, showing in detail, the daily balance of said moneys, so held by said principal on deposit, and the amount of interest accrued thereon, for the past preceding month, and shall pay over said deposit and said interest, upon the check, order or demand in writing of the officer thereunto duly authorized, and shall calculate, credit and pay interest as aforesaid, at the rate and in the manner aforesaid, and shall in all respects save and keep * * * safe and harmless by reason of the making of

said deposit or deposits, and shall generally do and perform each and everything required of depositories of public funds to be done. * * *" Such bank is required to execute such bond as principal with a surety company authorized in accordance with the laws of the state of New Mexico.

As to transactions occurring during first term, beginning January 1, 1917, and ending December 31, 1918, for which appellee was not bound as surety to said county as obligee, could appellee maintain an action against the bank, the relation of principal and surety on account of such acts not existing between appellee and said Davisson? The appellee not having been surety upon Davisson's official bond during his first term, and not having paid to the county any part of the shortage created during Davisson's first term, appellee would not be subrogated to any right of the county as against any person or bank for such shortage during said first term. It might be that the county for a consideration could assign to appellee its cause of action on account of any shortage existing during said first term, but the bill alleges:

"That in consideration of the payment of thirty-two thousand four hundred fifty and 46/100 ($32,450.46) dollars to the board of county commissioners of Chaves county as hereinabove alleged, the said board of county commissioners of Chaves county executed an agreement whereby the plaintiff was subrogated to all the rights and remedies of Chaves county resulting from the shortage, and the said board of county commissioners for Chaves county assigned, transferred, and set over to the American Surety Company all of its right, title, and interest to any and all claims, causes of action, and rights of reimbursement arising out of said shortage, a copy of said agreement is attached hereto, marked as Exhibit B, and made a part hereof."

The copy of the agreement, however, does not appear in the record, and no motion appears to have been made to require appellee to attach such as an exhibit. We take as true averment that the county executed that agreement. However, the terms of the agreement are not pleaded. This action being one in equity, based upon equitable doctrine of subrogation, and not at law, upon a contract assigning to the appellee the county's cause of action at law, we are not at liberty to assume that appellee acquired from the county any greater right than the principles of equity gave it, namely, a surety's right of subrogation to the obligee's rights and remedies.

St. Louis K. & S. E. R. R. Co. v. United States et al., 267 U. S. 346, 45 S. Ct. 249, 69 L. Ed. 649; Interstate Land Co. v. Maxwell Land Co., 139 U. S. 577, 11 S. Ct. 656, 35 L. Ed. 278; Dillon v. Barnard, 21 Wall. 430, 22 L. Ed. 673. Nothing is pleaded except the fact that the appellee was subrogated to the county's right of action for shortage created and existing during Davisson's second term, and that is all for which appellee has sued; its claim being for exact amount alleged to have been paid by it to the county on account of shortage allocated to the second term.

Does the bill allege any act on the bank's part, or any wrongful participation by it in any act of Davisson, during his second term, as causing or contributing to the shortage occurring and existing during the second term? Specific transactions alleged during his first term are in substance that said treasurer and collector, on the last days of April, May, June, July, and August, 1917, drawing checks on his official account in said bank by agreement with H. B. Sanders, "its then cashier," with a knowledge of certain officials, whose names are not disclosed, that same should be passed to credit of his official account on such dates, but not charging same to his official account upon which same were drawn in said bank until after such report was made, so that the bank's certificate or report made on the 1st days of May, June, July, August, and September, 1917, would show an excessive balance, thereby causing to be made a false statement as to condition of his official depository account, and intentionally resulting in the true condition of such account not being disclosed by such reports. There is no averment whatever in the bill that the American National Bank, at any other time than as above specified between April 30, 1917, and September 1, 1917, or at any time during Davisson's second term, did any acts calculated to cover any shortage occurring or existing during his second term, or to deceive the finance board or traveling auditor, or to assist Davisson in covering up such shortage. It is alleged that transactions similar to the kiting transactions pleaded in paragraph 14, referred to as illustrations, occurred every month from September, 1917, to November, 1920, and that the reports made on the 1st of each month by the various Roswell banks thereby showed a fictitious and false balance to the credit of said Ben C. Davisson, thus enabling him to conceal his shortage. But is this a sufficient averment? If the American National Bank did anything during

Davisson's second term to assist him in converting the county's money to his own use, or in covering up his shortage, the facts should be explicitly alleged, a mere averment that similar transactions occurred and that monthly verified statements of various Roswell banks showed a false balance does not appear to be sufficiently specific against a direct attack by motion to dismiss. Cragin v. Lovell, 109 U. S. 199, 3 S. Ct. 132, 27 L. Ed. 903; Equitable Life Assn. Soc. v. Brown, 213 U. S. 33, 29 S. Ct. 404, 53 L. Ed. 682; Millard v. Baldwin, 69 Mass. (3 Gray) 486.

Furthermore, the fact that the American National Bank did no such act during Davisson's second term is recognized and practically stated by the appellee in paragraph 16 of the bill, in which it is alleged that "by reason of all of the foregoing transactions and matters, and because of the false and fictitious reports made by the American National Bank to the board of finance of Chaves county and the state traveling auditor, and the consequent failure to discover the shortage of the said Davisson at the time of the *first report* and the *covering of the shortage* by that means, and the subsequent defalcations of which the said Davisson was guilty, and which would have been prevented by a full disclosure of the facts by the said American National Bank," which was during his first term. The pleader being at liberty to choose the language in which he makes his averments, it is his duty to specifically plead the facts constituting his cause of action, and the presumption is that he makes his averments as strong as the facts will permit. A cause of action cannot be pleaded by innuendo, and essential averments cannot be supplied by mere deductions; but, if we are to make deductions, the only facts deducible from those attempted to be pleaded herein are that all fraudulent acts participated in by the American National Bank occurred during Davisson's first term of office.

Construing the bill as alleging that the bank, in breach of duty it owed to the county, by statute or contract as a public depository, made false reports to the county finance board and traveling auditor, whereby the shortage in Davisson's accounts during his first term was concealed, the next question is whether those acts so done during Davisson's first term, when appellee was not surety on Davisson's bond, gave rise to any cause of action on the part of appellee for a shortage which Davisson, on account of being re-elected for a second term, was enabled to create during his second term. If the county was suing the bank for the shortage created dur-

ing Davisson's first term, the county could recover, not because Davisson was enabled to continue in office or be elected to a second term, but on account of the bank having violated its statutory or contractual duty in assisting Davisson in perpetrating a fraud, thereby rendering the bank directly liable on account of the loss occasioned. Assuming that the county could assign such cause of action to appellee, it has not done so. At most it has assigned nothing but a cause of action for the shortage occurring and existing during the second term. But may it be said that, but for the bank's false reports made between April 30 and September 1, 1917, and the concealment of a shortage during Davisson's first term, he would have been removed from office and not re-elected for a second term, which are mere opinions and conclusions incapable of proof, and that the bank is therefore liable to appellee by subrogation for the shortage created during the second term on account of acts of the bank done during the first term which enabled Davisson to be again elected for a second term and to continue in office?

It is carrying the doctrine of subrogation very far to hold that acts committed by the bank before any relation of principal and surety existed or was contemplated between appellee and Davisson would give rise to a cause of action on behalf of appellee on the theory that thereby it enabled Davisson to be re-elected and the relation of principal and surety to be established between him and appellee. It would be going far to say that the county itself could maintain an action against the bank for a shortage caused during Davisson's second term on the ground that, if the bank had disclosed the shortage of which it had knowledge during the first term, and which it was obligated to disclose in its monthly certified statement, Davisson would not have been re-elected, or would have been removed from office, and his successor, when appointed, would not have defaulted, and Davisson woud not have been then elected for a second term, and the party elected for such term would not have defaulted. Nelson Co. v. Northcote, 6 N. D. 378, 43 N. W. 897, 6 L. R. A. 230.

An allegation that, had such reports been truthfully made on the 1st days of May, June, July, August, and September, 1917, that Davisson would have been removed from office, and therefore he would not have had an opportunity to increase his shortage during his second term, would not necessarily mean that his successor, when appointed, would not have been a defaulter to a like amount. It would

be necessary to reach that conclusion, which is merely a matter of opinion and assumption, before the county would be entitled to recover, and such cannot be pleaded as a fact, because it is incapable of proof.

Further, to sustain appellee's further allegation of the bill, it is necessary to presume that, if a correct statement had been certified by said bank, said Davisson would not have paid the alleged shortage on demand (section 1546, Code N. M. 1915), and would have been removed from office during his first term, and not afterwards elected for a second term beginning January 1, 1919, or, if so, that such successor would not have caused a like shortage. The three instances as illustration of Davisson's method of embezzling by kiting checks, one on April 30, 1918, one on February 28, 1919, and one on April 30, 1920, the first occurring several months after a false statement was knowingly certified by the "then cashier" of the bank —according to the allegations of paragraph 14 of the bill—each of said transactions alleged to have occurred from April to September, 1917, inclusive, by agreement and in concurrence with H. B. Sanders, "the then cashier," which were then discontinued.

It is alleged, however, that transactions similar to foregoing three illustrations occurred every month from September, 1917, to November, 1920, in three Roswell banks, depositories of the county, and "by reason of such similar transactions" that is, kiting of checks by said treasurer and collector as between the accounts in these three banks— statements made by each of these banks showed a false balance, and by reason thereof said treasurer and collector was enabled to conceal his shortage. Further, that said bank "knew the facts" as to said fraudulent transactions, "or could have ascertained the facts by examining the books and records."

It appears from allegations of the bill that agreement between said Davisson and said Sanders, the then cashier, to certify false statements had theretofore been abandoned and discontinued after September, 1917. It is not alleged in the bill that the defendant bank actively and knowingly participated by false statements as to balances in embezzlements by said treasurer and collector subsequent to September, 1917, or had knowledge of such transactions, except the allegation that "defendant bank *knew the facts* as to said fraudulent transactions by Davisson, *or could have ascertained the exact facts in reference thereto, by examining the books and checks.*" The primary cause of the loss involved for which appellee was bound was the embezzlement of the treasurer and collector during his term beginning January 1, 1919, and the bank under no theory can be held responsible in this action, unless the allegation of knowledge of certain embezzlements during the first term of said Davisson is sufficient to charge said bank with the duty to make special investigation of its books and records and checks as presented, in a special effort to determine whether said treasurer and collector was embezzling funds of said county, before such checks would be passed to the credit of his official account. Is said bank's knowledge of the treasurer and collector's shortage during the period when false statements were certified by its then cashier, H. B. Sanders, as to said treasurer's accounts, from April to September, 1917, inclusive, sufficient to charge said bank with the duty to specially investigate the condition of the treasurer's accounts during the term beginning January 1, 1919, and to have its tellers and bookkeepers specially inspect and examine, for the purpose of ascertaining whether said treasurer and collector during such period was kiting checks, and thereby committing fraudulent acts upon the county, in *drawing upon other official depositories in such a manner as to cause on certain dates excessive balances or credits to appear on the books of said American National Bank on account of such kiting*? From the bill it appears that said treasurer and collector did not keep all of his official funds in said bank; two other banks in the city of Roswell being also depositories in which county money was held. Obviously said bank could not be charged with duty to investigate books and records of other depositories. From allegations of bill it appears that Davisson's method of kiting checks after September, 1917, deceived not only said bank, but two other banks, which were county depositories.

Liability by said bank to said county on account of "its then cashier," H. B. Sanders, knowingly certifying to a false statement of the condition of the accounts of the treasurer and collector on 1st of each month, beginning with May and ending September, 1917, thus showing certain excessive balances in his favor in his official account on such dates, is not alleged in the bill as a basis of recovery, or that any such false statements were knowingly certified to by said bank after September, 1917. The bill is silent as to the continuance of H. B. Sanders as cashier after September, 1917, but it does disclose that that practice was discontinued after that date. Would not the presumption be that every fact

that could have been stated favorable to appellee had been so pleaded in its bill, and that we should conclude that said Sanders did not continue as cashier, or in any other official capacity, after that period? Notice to the cashier in the line of his duty was notice to the bank, but such knowledge of the officer was imputable to the bank only so long as he continued with the bank in such an official capacity, and not after such relationship ceased. The bill, however, seems to proceed on the theory that the bank's practice of certifying of said false statements on the 1st day of each month from May to September, 1917, inclusive, showing excessive amounts to the credit of said county treasurer and collector on account of a collusive agreement with "the then" cashier, H. B. Sanders, is sufficient to impose the duty on said bank at all times thereafter to make special investigation to determine whether the treasurer and collector was embezzling, by kiting or otherwise, funds of said county, and that the failure of the bank to make such special investigation would impose a liability for any loss occurring to the county by reason of future embezzlements by the said officer during that term or any succeeding term.

I cannot concur that any such duty is imposed upon said bank under allegations of the bill. If so, every bank becomes a public depositary at a very high degree of peril. It is admitted that appellee, the American Surety Company, did not pay any of the shortage allocated to the first term. According to my view it is not essential to determine whether a right of action existed in favor of the county as against the Citizens' National Bank, for which appellant is receiver, on account of acts of omission or commission of American National Bank during the first term of said treasurer and collector, on account of its having taken over said bank during the latter part of the second term. The only acts of omission or commission which are alleged to exist during first term, and to have recurred during second term, are that "on several occasions the canceled checks used by Davisson in kiting funds to conceal his shortage had been returned to the American National Bank," and it and the defendant (Citizens' National Bank) *knew the facts* as to said fraudulent transactions by Davisson, *or could have ascertained the exact facts in reference thereto by examining said checks* and their books. Under modern practice and procedure alternative allegations seem to be permissible, but "it is well settled that on demurrer an alternative allegation is to be con-

strued against the pleader and most favorably to the party demurring." Potter v. Gilbert, 130 App. Div. 632, 115 N. Y. Supp. 425.

"Where the complaint alleges that one of two things is true, the complaint must be held insufficient, unless each alternative allegation is sufficient, since the complaint must be construed most strongly against the pleader." National Park Bank v. L. & N. R. R. Co., 199 Ala. 192, 74 So. 69; 4 Ency. Pleading and Practice, 620.

"If the complaint be construed most strongly against the pleader, where the allegation is that one of two things is true, unless each alternative allegation is sufficient to make out a case the count must be held insufficient. Southern Railway Co. v. Bunt, 131 Ala. 591, 594, 32 So. 507; B. R. L. & P. Co. v. Nicholas, 181 Ala. 491, 502, 61 So. 361; Central of Georgia Railway Co. v. Freeman, 134 Ala. 354, 32 So. 778; Sloss-Sheffield Co. v. Sharp, 156 Ala. 284, 288; 47 So. 279; 4 Ency. Pl. & Pr. 620. The count must be tested by its weakest alternative averment (Jordan v. Ala. C. G. & A. Ry. Co., 179 Ala. 291, 60 So. 309; Osborne v. Ala. S. & W. Co., 135 Ala. 571, 33 So. 687)."

In Brady v. Reliance Motion Picture Corp. et al. (D. C.) 232 F. 259, in an opinion by Judge Mayer, it is said: "Defendant urges that Falk v. Howell (C. C.) 34 F. 739, is authority for the proposition that the alternative pleading must be held bad. In that case the facts were, or should have been, within the knowledge of the plaintiff, and clearly it was his duty to set forth an accurate compliance with statutory requirements. Here, however, this defendant must be better informed than the plaintiff as to whether it had actual knowledge or constructive notice, either of which (properly inferred from facts) would make the Mutual a proper party defendant."

Where a fact is pleaded in the alternative on demurrer the interpretative conclusion most strongly against the pleader must be adopted. So, when the allegation is that the party *"knew the facts"* or *"could have ascertained the exact facts by examining said checks and their books,"* only the latter alternative is to be considered as admitted. Under this rule appellee is confined to the allegation that the bank "could have ascertained the facts by examining said checks and their books." American Surety Co. v. Citizens' National Bank of Roswell, N. M. (C. C. A.) 294 F. 609, in which same shortage was involved, seems to me to be an authority for holding no cause of action is here stated.

Proximate cause of the loss, if any, during the second term of the treasurer and collector, beginning January 1, 1919, under the bill, was embezzlement committed by him during such term, and the failure of the bank to make special investigation of checks drawn by him during such period on his official account carried by it, and its books relative thereto, in an effort to determine whether kiting of checks to conceal such embezzlements were taking place? It is suggested in the majority opinion that the bank would not necessarily be charged with knowledge of isolated acts of this nature, but that such transactions occurring monthly should excite suspicion and demand investigation, expecially in view of prior fraudulent conduct as alleged. In effect, the reports from May to September, 1917, inclusive, which were made under an agreement with the then cashier, H. B. Sanders, with concurrence of certain unnamed then existing officials, thus made basis of knowledge which imposed a duty upon the bank to at all times thereafter make special investigation to determine whether the money of the county was being embezzled by the treasurer. No duty of examination is alleged, unless it be the knowledge linked with transactions of the bank as to false statements made from May 1 to September 1, 1917, inclusive, the bill in effect disclosing that such transactions were abandoned after September, 1917, and were not continued after that time.

The bill failing to allege that the then cashier, H. B. Sanders (or other officials, not named, with whom such agreement was made), who made such false reports, continued as an officer or in an official capacity with said bank during the second term, in which the loss occurred for which appellee seeks to recover, such prior knowledge could not be imputed to the bank in connection with essentially different transactions and methods of the treasurer and collector in connection with his acts during his term beginning January 1, 1919. When it reported an excessive amount to the credit of the treasurer and collector, said bank and its surety were bound by that act by its cashier, and it could not withdraw such excessive sum from his credit, except on checks or vouchers on such account signed by him as county treasurer and collector, and for all sums excessively shown to his credit said bank and its surety were bound to the county, the same as for other amounts shown which had been actually placed with it, but no such claim is here involved. I cannot agree that a cause of action for damages resulting as proximate cause on the theory of a presumption or speculation or conjecture that the county board of finance would have caused his removal, and that a successor would have been appointed to serve out his unexpired term, who would not have committed embezzlements, and that he would not have been re-elected by the electors of that county for the term beginning with January 1, 1919, and that the person who was so elected for such term would not have committed embezzlements.

I most respectfully dissent from the majority opinion and the conclusion therein.